IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY
STATE OF MISSOURI

| | |
|---|---|
| MICHAEL TUCKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No. 19SL-CC00498 |
| v. ) | |
| ) | |
| FORD MOTOR COMPANY, ) | Division No. 18 |
| ) | |
| Defendant. ) | |

## THIRD AMENDED PETITION

COMES NOW plaintiff, Michael Tucker (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, and asserts this class action under the Missouri Merchandising Practices Act (§ 407.010 *et seq.*) (the "MMPA"), the Magnuson-Moss Warranty – Federal Trade Commission Improvement Act (15 U.S.C. § 2301 *et seq.*) (the "MMWA"), for Unjust Enrichment and for Declaratory Relief against Defendant Ford Motor Company (hereinafter referred to as "Defendant"), and in support thereof, states to the Court the following:

## INTRODUCTION

1. Plaintiff brings this class action on behalf of himself and all other similarly situated persons who purchased a 2011 to 2018 Ford Focus vehicle (hereinafter, "Subject Focus Vehicles") for end use and not for resale.

2. The Subject Focus Vehicles were manufactured with subframes and undercarriages that lack adequate rust corrosion protection. As a result, the subframes and undercarriages on Subject Focus Vehicles are prone to experiencing excessive rust corrosion, rendering the vehicles unstable and unsafe to drive. Absent time consuming and expensive repair or replacement, Subject Focus Vehicles that experience excessive rust corrosion are essentially worthless.

3.	Defendant has long known that the subframes and undercarriages on its Focus vehicles lack adequate rust corrosion protection. Despite this knowledge, Defendant failed to disclose the existence of this defect to Plaintiff and other Class members at the time of sale, has not issued a recall to inspect and repair Subject Focus Vehicles, and has not offered to reimburse Subject Focus Vehicle owners for costs incurred to identify and repair such defect.

## PARTIES AND JURISDICTION

4.	Plaintiff is a natural person of majority age and legal resident of St. Louis County, Missouri.

5.	Defendant Ford Motor Company is a foreign corporation from Michigan doing business in the State of Missouri.

6.	This Court has the statutory authority to grant the relief requested herein pursuant to 15 U.S.C. § 2310(d) and § 407.025 R.S.Mo.

7.	This Court has jurisdiction over the subject matter of this civil suit pursuant to the Missouri Constitution, Article V § 14.

8.	Venue is proper in Saint Louis County, Missouri pursuant to § 508.010.2 R.S.Mo. in that Defendant can be found in St. Louis County where its registered agent can be served.

## BACKGROUND

9.	Subject Focus Vehicles were manufactured with subframes and undercarriages that lack adequate rust corrosion protection. As a result, the Subject Focus Vehicles are subject to and have experienced severe rust corrosion, which affects the stability of the vehicle and renders the vehicle unsafe to drive and their presence on the roadways a hazard.

Electronically Filed - St Louis County - March 17, 2022 - 05:46 PM

10. On August 29, 2018, Plaintiff purchased a new 2018 Ford Focus with approximately five miles and bearing the Vehicle Identification Number 1FADP3L96JL277945 (hereinafter the "Vehicle") for the total sale price of $22,500.

11. In consideration for the purchase of the above Vehicle, Defendant issued to Plaintiff one or more written warranties.

12. One such warranty is a PowerCare Nationwide Powertrain Coverage for 10 years or 200,000 miles, effective on the purchase date.

13. Within the warranty period, the Vehicle exhibited defects in material and/or workmanship that caused rust on the undercarriage and related parts, and resulted in extensive corrosion, which Plaintiff reported to Defendant.

14. About one month after purchasing the Vehicle, while changing the oil, Plaintiff observed extensive salt, corrosion, and rust on the entire lower engine bay. He immediately contacted Sales Consultant for Bommarito Ford, Bryan Skaggs and emailed him pictures of the damage.

15. The next day, Plaintiff and Mr. Skaggs spoke over the phone. Mr. Skaggs agreed that the amount of corrosion was excessive and agreed to show the pictures to management at Bommarito Ford.

16. On or about November 8th, the Bommarito Service Department treated the Vehicle with "Salt Away", but several corroded components remained untreated. Specifically, no body panels or inner fenders were removed. As a result, salt and corrosion remain on the body and engine of the Vehicle. Service Manager for Bommarito Ford, Sean Johnson, stated that Bommarito would do nothing more, regardless of the inadequacy of the Salt Away treatment.

17. Plaintiff was advised that due to the corrosion, his Vehicle could have functional and operational problems that could be a safety issue. Plaintiff stopped driving the Vehicle once informed.

18. Rust corrosion has a significant effect on metal items. It makes them look orange and rough, and makes them weaker, by replacing the strong iron or steel with flaky powder.

19. Excessive rust corrosion on Subject Focus Vehicles compromises the safety, stability, and crash-worthiness of such vehicles, because important suspension components, engine mounts, transmission mounts, and body mounts anchor to the subframes of the vehicles.

20. According to Popular Mechanics, "A rusted-through frame means the structural and crash integrity of the car is questionable, and it should be inspected and repaired by a qualified repair facility." See https://www.popularmechanics.com/cars/how-to/a3084/how-to-fight-rust-and-win-14930616/ (last visited March 9, 2022).

21. Upon information and belief, Defendant does not employ corrosion-preventative coatings or corrosion-resistant materials in its manufacture of its vehicles.

22. Furthermore, Defendant did not have adequate processes in place to ensure that there would not be unnecessary corrosion in its Vehicles.

23. During the testing phase on the Subject Focus Vehicles, Defendant discovered severe rust corrosion on the subframes and undercarriages.

24. Defendant took no corrective action after discovering severe rust corrosion during the testing phase on Subject Focus Vehicles.

25. Defendant authorized production of Subject Focus Vehicles without correcting inadequacies discovered during the testing phase on Subject Focus Vehicles.

Electronically Filed - St Louis County - March 17, 2022 - 05:46 PM

26. Defendant has long been aware that subframes and undercarriages on Focus vehicles were exhibiting excessive rust corrosion as a result of such subframes and undercarriages not having adequate corrosion-resistant protection.

27. This corrosion could have caused the Vehicle to fail while moving, causing serious injury or even death.

28. This corrosion caused the Vehicle to have not been in new condition but instead in a condition where it was effectively aged by many years by the time of the purchase, rendering the Vehicle unusable.

29. Despite Plaintiff's numerous requests to the Sales Department, Service Department, to Mr. John Bommarito, and Defendant to get this problem remedied, Defendant has failed, and continues to fail, to correct the situation.

30. Unsurprisingly, the issue continues to worsen due to the remaining corrosion, yet, Bommarito Ford and the Defendant refused to cover the Vehicle under its warranty.

31. All attempts to repair the Vehicle were unsuccessful and the nonconformities with the Vehicle are ongoing.

32. Furthermore, Defendant never provided or paid for a rental car during any of the repairs.

33. As of the date of this Third Amended Petition, Defendant has not reimbursed Plaintiff for loan payments he made for the time periods in which he did not obtain any use of the Vehicle during the repair attempt.

34. Plaintiff exhausted his remedies with the Defendant by engaging in a formal dispute resolution process. Without inspecting the vehicle, Defendant declined to provide relief to Plaintiff.

Electronically Filed - St Louis County - March 17, 2022 - 05:46 PM

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action on his own behalf and on behalf of all others similarly situated, on behalf of a proposed class (the "Class"), defined as:

> All persons and entities in the state of Missouri who purchased a model year 2011 – 2018 Ford Focus for personal use and not resale with a subframe or undercarriage that exhibited rust corrosion.

36. Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant and its legal representatives, successors and/or assigns; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

37. Plaintiff also seeks certification of the following proposed class ("Declaratory Relief Class"):

> All persons and entities in the state of Missouri who purchased a model year 2011 – 2018 Ford Focus for their own use and not for resale.

38. Excluded from the Declaratory Relief Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant and its legal representatives, successors and/or assigns; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

39. Certification of Plaintiff's claims for a class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

40. The members of Class are so numerous that their individual joinder herein is impracticable. The exact number of Class members is currently unknown to Plaintiff, but Plaintiff

estimates that there are at least tens of thousands of Class members. Ultimately, the sheer number of Class members makes joinder of all members impracticable.

41. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

    a. whether the Subject Focus Vehicles are defective;

    b. whether Defendant's marketing, distribution, and sale of Subject Focus Vehicles with inadequate rust corrosion protection was unconscionable;

    c. whether Defendant's omission that Subject Focus Vehicles lacked adequate rust corrosion protection was a fact that a consumer would be expected to rely on when deciding whether to purchase a vehicle;

    d. whether Defendant was unjustly enriched as a result of the sale and distribution of the defective Subject Focus Vehicles;

    e. whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief;

    f. whether Plaintiff and Class members are entitled to disgorgement of gross revenues and/or other equitable relief; and

    g. whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

42. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved.

Electronically Filed - St Louis County - March 17, 2022 - 05:46 PM

Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

43. Plaintiff's claims are typical of the claims of the other Class members because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and no defense is available to Defendant that is unique to Plaintiff.

44. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

45. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

Electronically Filed - St Louis County - March 17, 2022 - 05:46 PM

## THE MERCHANDISING PRACTICES ACT

46. The Circuit Court has jurisdiction of this action pursuant to Chapter 407 of the Revised Statutes of Missouri, and specifically under § 407.025.1, which allows an individual to seek damages, attorneys' fees, costs and punitive damages for violations of § 407.020.

Section 407.020.1 provides, in pertinent part:

1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce...is declared to be an unlawful practice.

Section 407.025.1 provides in pertinent part:

1. Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers a ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020 may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

\* \* \*

47. Section 407.010(4) defines "merchandise" as any objects, wares, goods, commodities, intangibles, real estate or services. This definition of merchandise includes the Subject Focus Vehicles as advertised and sold by Defendant.

48. Section 407.010(6) defines "Sale" as "any sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit."

49. Section 407.010(7) defines "Trade" or "commerce" as "the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible

- 9 -

or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated. The terms "trade" and "commerce" include any trade or commerce directly or indirectly affecting the people of this state." § 407.010(7).

50. Pursuant to authority granted in § 407.145, the Attorney General has promulgated rules explaining and defining terms utilized in § 407.020 of the Merchandising Practices Act. Said rules are contained in the Missouri Code of State Regulations (hereinafter "CSR"). The rules relevant to the Merchandising Practices Act allegations herein include, but are not limited to, the provisions of the CSR, which are as follows:

15 CSR 60-8.010 provides the following definitions:

(1) (B) Consumer shall include any person (as defined in section 407.010.5., RSMo.) who purchases, may purchase or is solicited for purchase of merchandise.

(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.
15 CSR 60-8.020 provides that:

An unfair practice is any practice which-
(A) Either-
1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or
2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

15 CSR 60-8.040 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

15 CSR 60-8.090 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to engage in any method, use

- 10 -

Electronically Filed - St Louis County - March 17, 2022 - 05:46 PM

or practice which-
(A) Violates state or federal law intended to protect the public; and
(B) Presents a risk of, or causes substantial injury to consumers.

15 CSR 60-9.010 provides that:

(1)     (C) Material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial matter.

15 CSR 60-9.020 provides that:

(1)     Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.

(2)     Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence, are not elements of deception as used in section 407.020.1., RSMo....Deception may occur in securing the first contact with a consumer and is not cured even though the true facts or nature of the advertisement of offer for sale are subsequently disclosed.

15 CSR60-9.030 provides that:

(1)     It is deception for any person in any advertisement or sales presentation to use any format which because of its overall appearance had the tendency or capacity to mislead consumers.

15 CSR 60-9.060 provides that:

(1)     False promise is any statement or representation which is false or misleading as the maker's intention or ability to perform a promise, or likelihood the promise will be performed.
(2)     Reliance and injury are not elements of false promise as used in section 407.20.1., RSMo.

15 CSR 60-9.070 provides that:

(1)     A misrepresentation is an assertion that is not in accord with the facts.

- 11 -

(2) Reliance, knowledge that the assertion is false or misleading, intent to defraud, intent that the consumer rely upon the assertion, or any other culpable [capable in origin] mental state such a recklessness or negligence, are not elements of misrepresentation as used in section 407.020.1.

15 CSR 60-9.080 provides that:

(1) It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to make an untrue statement of material fact.

15 CSR 60-9.090 provides that:

(1) It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to sate a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading.

15 CSR 60-9.110 provides that:

(1) Concealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers.
(2) Suppression of a material fact is any method, act, use of practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated.
(3) Omission of a material fact is any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her.
(4) Reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission as used in section 407.020.1.

<div align="center">

**COUNT I**
**DEFENDANT'S VIOLATIONS OF THE MMPA**

</div>

51. Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

52. Plaintiff and the Class members are a "Person," as defined by § 407.010(5) R.S.Mo. at the time that Plaintiff purchased the Vehicle.

53. The Subject Focus Vehicles are "merchandise" as defined by § 407.010(4) R.S.Mo. at the time that Plaintiff purchased the Vehicle.

54. Plaintiff and the Class members' purchase of the Subject Focus Vehicles are a "Sale" or is in connection with a "Sale" as defined by § 407.010(6) and § 407.020 R.S.Mo.

55. Plaintiff and the Class members' purchased the Vehicle for personal, family and household purposes.

56. Defendant's marketing, distribution, and sale of the Subject Focus Vehicles with subframes and undercarriages that lacked adequate rust corrosion protection was unconscionable.

57. Defendant omitted from Plaintiff and Class members the important fact that Subject Focus Vehicles were equipped with subframes and undercarriages lacking adequate rust corrosion protection with the intent that Plaintiff and Class members rely on such omission.

58. Defendant also misrepresented to Plaintiff and Class members that there were no material issues with the Subject Focus Vehicles, that the Subject Focus Vehicles are safe to drive and grossly misrepresented the value of the Subject Focus Vehicles.

59. Defendant's unconscionable conduct and omission of material facts occurred in connection with Defendant's conduct of trade and commerce in Missouri.

60. Furthermore, Defendant did not have adequate processes in place to ensure that there would not be unnecessary corrosion in its Vehicles.

61. During the testing phase on the Subject Focus Vehicles, Defendant discovered severe rust corrosion on the subframes and undercarriages.

62. Defendant took no corrective action after discovering severe rust corrosion during the testing phase on Subject Focus Vehicles.

63. Defendant authorized production of Subject Focus Vehicles without correcting inadequacies discovered during the testing phase on Subject Focus Vehicles.

64. The above-stated actions constitute acts and practices that are misrepresentations, concealments, false promises, fraud, omissions, suppression, deceptions and unfair practices of and concerning material facts in violation of Section 407.020 of the MMPA at the time of the sale.

65. Section 407.025.1 of the MMPA at the time of the sale gave Plaintiff and Class members the right to recover actual damages, punitive damages, reasonable attorneys' fees and costs.

66. Plaintiff and Class members suffered damages directly and proximately caused by the conduct of Defendant as alleged including, but not limited to, the subframes and undercarriages on their Subject Focus Vehicles experienced significant rust corrosion, rendering their Subject Focus Vehicles less valuable than what they bargained for, dangerous to drive and, without repair, worthless.

67. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant and/or to deter it and others from like conduct in the future.

## COUNT II
## DEFENDANT'S BREACH OF EXPRESS AND IMPLIED WARRANTY OF MERCHANTABILITY UNDER MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301 et seq.

68. Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

69. Plaintiff and Class members are a "Consumer" as defined by 15 U.S. C. § 2301(3).

70. Plaintiff and Class members are a "Buyer" per § 400.2-103 R.S.Mo.

71. Defendant is a "Supplier" and a "Warrantor" as defined by 15 U.S.C. §§ 2301(4) and 2301(5).

72. Defendant is a "Seller" per § 400.2-103 R.S.Mo.

73. The Subject Focus Vehicles are a "Consumer Product" as defined by 15 U.S.C. § 2301(1).

74. By its actions and affirmations, Defendant created an express warranty for the Subject Focus Vehicles per § 400.2-313 R.S.Mo.

75. Defendant is a merchant with respect to vehicles, in that it holds itself out as a manufacturer having knowledge about vehicles in general.

76. A warranty that the Subject Focus Vehicles are merchantable was therefore implied in Plaintiff's purchase, pursuant to § 400.2-314 R.S.Mo.

77. Defendant also provided Plaintiff and Class members an "Implied Warranty" as defined by 15 U.S.C. § 2301(7).

78. Defendant knew or should have known that the Subject Focus Vehicles were defectively produced with subframes and undercarriages that lacked adequate rust corrosion protection, rendering Subject Focus Vehicles unfit for their ordinary purpose. Indeed, Defendant was well aware of the subframe and undercarriage rust corrosion problems on its Subject Ford Vehicles.

79. Defendant breached the implied warranty of merchantability by marketing, distributing, and selling Subject Ford Vehicles with defective subframes and undercarriages as being fit for their ordinary purpose when, in fact, they were not. As stated above, excessive rust corrosion to a vehicle subframe or undercarriage affects the stability of a vehicle, rendering the

Electronically Filed - St Louis County - March 17, 2022 - 05:46 PM

920

vehicle unsafe to drive and requiring substantial repairs or even replacement of the vehicle's entire subframe or undercarriage.

80. Plaintiff and Class members were damaged as a result of Defendant's breach of the implied warranty because the subframes and undercarriages on Subject Focus Vehicles are defective, rendering the vehicles not fit for ordinary use, negatively affecting the stability and safety of the vehicles, and requiring repair and even replacement of the vehicles' subframes and undercarriage.

81. One or more of the warranties Defendant provided Plaintiff and Class members was a "Written Warranty" as defined by 15 U.S.C. § 2301(6) and/or an "Implied Warranty" as defined by 15 U.S.C. § 2301(7).

82. 15 U.S.C. § 2310(d)(1) provides:

> "[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty or service contract, may bring suit for damages and other legal and equitable relief..."

83. One of the obligations under the MMWA is that a "warrantor must…remedy such consumer product within a reasonable time and without charge, in the case of a defect," per 15 U.S.C. § 2304(a)(1).

84. Defendant has breached this warranty to repair the defects in the Subject Focus Vehicles, because it failed to repair within a reasonable amount of time and without charge the inadequately coated subframes and undercarriages on Subject Focus Vehicles to ensure such vehicles did not exhibit severe rust corrosion, in violation of 15 U.S.C. § 2304(a)(1).

85. Despite Defendant's knowledge of the problem and opportunity to cure, Defendant failed to notify the public and members of the Class of the defect and to repair or replace, at no charge to the Class members, the defective subframes and undercarriages.

Electronically Filed - St Louis County - March 17, 2022 - 05:46 PM

921

86. Plaintiff and the Class members were damaged as a result of Defendant's breach of express warranty because the subframes and undercarriages on Subject Focus Vehicles are defective, negatively affecting the stability and safety of the vehicles, and requiring repair and even replacement of the vehicles' subframes and undercarriages.

87. The defects of, and circumstances relating to, the Subject Focus Vehicles have caused any exclusive or limited remedy to fail of its essential purpose.

88. The warranties issued on the Subject Focus Vehicles by Defendant have failed of their essential purpose.

89. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant and/or to deter it and others from like conduct in the future.

## COUNT III
## UNJUST ENRICHMENT

90. Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

91. Defendant profited from Plaintiff's and other Class members' purchases of Subject Ford Vehicles.

92. Defendant knew, or should have known, that the subframes and undercarriages on Subject Focus Vehicles were not coated with adequate rust corrosion treatment.

93. Defendant received and retained monies as a result of Plaintiff and the other Class members' purchases of Subject Focus Vehicles under circumstances that it would be inequitable and unconscionable to permit Defendant to retain these benefits.

Electronically Filed - St Louis County - March 17, 2022 - 05:46 PM

Electronically Filed - St Louis County - March 17, 2022 - 05:46 PM

94. As a direct and foreseeable result of Defendant's unjust enrichment, Plaintiff and Class members suffered injury and seek an order directing Defendant to return to them the amounts that Defendant improperly received as a result of their purchases of Subject Focus Vehicles, plus interest.

**COUNT IV**
**DECLARATORY RELIEF**

95. Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

96. Defendant marketed, distributed, and sold Subject Focus Vehicles equipped with subframes and undercarriages prone to exhibiting excessive rust corrosion on account of Defendant's failure to treat the subframes and undercarriages on such vehicles with adequate rust corrosion protection.

97. Accordingly, Plaintiff seeks entry of the following declarations: (1) model years 2011 – 2018 Ford Focus vehicles lack adequate rust corrosion protection and are defective; (2) all persons who purchased model years 2011 – 2018 Ford Focus vehicles are to be provided the best practicable notice of the defect, which cost shall be borne by Defendant; and (3) Defendant must establish an inspection, repair, and replacement program and protocol and notify Class members of such program, pursuant to which Defendant, including its authorized representatives, and at no cost to Class members, will inspect, upon request, Class members' Subject Focus Vehicles for subframe or undercarriage rust corrosion, treat Subject Focus Vehicles that have not exhibited rust corrosion with adequate rust corrosion protection, and to repair or replace the subframes or undercarriages on Subject Focus Vehicles that have experienced rust corrosion.

# REQUESTS FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, and respectfully requests that the Court enter an Order:

A.	Certifying the Class under Rule 52.08 of the Missouri Rules of Civil Procedure and naming Plaintiff as Class Representative and his attorneys as Class Counsel to represent the Class members;

B.	Declaring that Defendant engaged in the unlawful conduct as alleged herein;

C.	Awarding Plaintiff and the other Class members actual, compensatory, and consequential damages;

D.	Awarding Plaintiff and the other Class members statutory damages;

E.	Awarding Plaintiff and the other Class members restitution and disgorgement;

F.	Awarding Plaintiff and the other Class members declaratory and injunctive relief;

G.	Requiring Defendant to repair or replace the subframes and undercarriages on the Subject Focus Vehicles;

H.	Awarding Plaintiff and the other Class members exemplary damages, should the finder of fact determine that Defendant acted with oppression and/or malice;

I.	Awarding Plaintiff and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

J.	Awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses; and

K.	Granting such other relief as the Court deems just and appropriate.

**Demand for Jury Trial**

Plaintiff requests a trial by jury, in St. Louis County, Missouri on all counts and allegations of wrongful conduct alleged in this Petition.

<div style="margin-left:40%">

Respectfully submitted,

**DONNER APPLEWHITE,
ATTORNEYS AT LAW**

By:  */s/ Thomas R. Applewhite*
Thomas R. Applewhite, #64437
Steven A. Donner, #63789
Christian T. Misner, #65572
906 Olive Street, Suite 1110
Saint Louis, Missouri 63101
Phone:    (314) 293-3526
Fax:      (888) 785-4461
Email:    tom.applewhite@da-lawfirm.com
          steve.donner@da-lawfirm.com
          christian.misner@da-lawfirm.com

*Attorneys for Plaintiff*

</div>