IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL TUCKER,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )          No.  4:22-cv-00430-AGF
                                   )
FORD MOTOR COMPANY,                )
                                   )
                                   )
          Defendant.               )

## MEMORANDUM AND ORDER

This putative class action is before the Court on Defendant Ford Motor

Company's motion to strike Plaintiff's class allegations.  (Doc. No. 38).  In his

complaint, Plaintiff describes two putative classes, including a "Declaratory Relief

Class", which includes all "persons and entities in the state of Missouri who purchased a

model year 2011-2018 Ford Focus for their own use and not for resale," and a

"Manifestation Class", comprised of all of those "persons and entities" whose putative

class vehicles actually had a "subframe or undercarriage that exhibited rust corrosion."

(Doc. No. 22).  Plaintiff asserts a cause of action for declaratory relief on behalf of

himself and the putative Declaratory Relief Class in Count IV of his petition, as well as

three causes of action on behalf of the Manifestation Class: (i) a violation of the Missouri

Merchandising Practices Act ("MMPA") (Count I); (ii) the breach of express and implied

warranty (Count II); and (iii) unjust enrichment (Count III).  *Id.*  Defendant now brings a

motion to strike Plaintiff's putative classes from his petition.  (Doc. No. 38).  The Court
heard oral argument on the motion on January 20, 2023, and the parties filed
supplemental briefing thereafter.  For the reasons set forth below, the motion to strike
with be granted in part and denied in part.

## Factual Background

Plaintiff first filed this action in Missouri state court on February 1, 2019, alleging
that a defect in his 2018 Ford Focus caused excessive corrosion.  (Doc. No. 38 at 7).  At
that time, Plaintiff asserted only individual claims against Ford Motor Company and
Bommarito Ford, Inc., the dealership which sold him his vehicle.  *Id*.  Over the next three
years, Plaintiff and the then-defendants engaged in written discovery.  *Id*.  Through this
discovery Defendant produced 2018 Ford Focus corrosion requirements, test procedures
for the corrosion test on the 2018 Ford Focus, the vehicle corrosion Design Verification
Plan and Report for the 2018 Ford Focus, and any corrosion-related complaints or recalls
involving the 2018 Ford Focus.  *Id*.  Plaintiff also took Defendant's corporate deposition
on topics including Defendant's testing and complaints related to the 2018 Ford Focus.
*Id*.  After this discovery, on March 17, 2022, Plaintiff filed a third amended petition
against Ford Motor Company only.  *Id*.  This petition included claims on behalf of
putative classes.  *Id*.  Defendant then removed the case to this Court pursuant to 28
U.S.C. §§ 1332(d), 1446, and 1453(b).  *Id*.

In his third amended petition, Plaintiff asserts that he purchased a new 2018 Ford
Focus on August 29, 2018.  (Doc. No. 22 at 3).  One month later, Plaintiff noticed
extensive salt, corrosion, and rust on the lower engine bay.  *Id*.  Though Plaintiff brought

the car back to the dealership for repair, all attempts at repairing the vehicle were unsuccessful. *Id*. Eventually, as part of a settlement with the dealership, the dealership replaced Plaintiff's vehicle with a newer Ford Ranger. *Id*. At oral argument, Plaintiff confirmed the sale took place in November, 2021. The dealership is not named as a defendant in the third amended petition.

## Legal Standard

The parties dispute the appropriate time at which to consider the sufficiency of Plaintiff's class allegations. Defendant asserts that the Court may evaluate the sufficiency of class allegations prior to discovery. (Doc. No. 38 at 9-10). In response, Plaintiff argues that a motion to strike is premature and that Defendant cannot meet its burden under Federal Rule of Civil Procedure 12(f). (Doc. No. 40 at 2-3). The Court must therefore determine the proper legal standard by which to evaluate the case.

The plaintiff bears the burden of demonstrating that his proposed class satisfies all requirements of Federal Rule of Civil Procedure 23(a) and one of the subsections of Rule 23(b) on a motion to certify the class. *See Johannessohn v. Polaris Industries Inc.,* 9 F.4th 981, 984 (8th Cir. 2021) (citing *Hale v. Emerson Elec. Co.*, 942 F.3d 401, 403 (8th Cir. 2019)). However, a defendant need not wait until a plaintiff files a motion to certify to attack the sufficiency of a proposed class: the Eighth Circuit has determined that defendants may test a plaintiff's class allegations prior to discovery and a motion for class certification on either a motion to strike or a motion to dismiss. *See Donelson v. Ameriprise Financial Services, Inc.*, 999 F.3d 1080, 1091 (8th Cir. 2021). Bringing a motion to strike, however, shifts the burden of persuasion to the defendant, and the more

3

strenuous standard applied to motions to strike portions of a plaintiff's pleadings is then applied when considering the class allegations. *Id*.

Defendant brings this motion pursuant to Federal Rule of Civil Procedure 23; under Rule 23(d)(1)(D), courts may require a plaintiff amend their pleadings to "eliminate" allegations about "absent persons." This rule is intended to ease case management and encourage the fair and efficient coordination of the action. *See* Fed. R. Civ. P. 23(d)(1)(D) advisory committee note to 1966 amendment, subdivision (d). However, courts consider motions to strike a plaintiff's class allegations brought under this rule by the standards articulated in Rule 12(f). *See Donelson*, 999 F.3d at 1091 (citing Fed. R. Civ. P. 12(f)).

Under Rule 12(f), the Court may strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous material from a party's filings. The Court enjoys "liberal discretion" in determining whether to strike a party's pleadings. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). Accordingly, the Court may strike portions of a party's pleadings when those portions lack a sufficient legal basis of support. *See Donelson*, 999 F.3d at 1092 (citing *BJC Health Sys.*, 478 F.3d at 916-918). Such a remedy is a "drastic" measure considered both "extreme" and "disfavored," however. *Id.* at 1091-92 (internal citations omitted). Many courts in the Eastern District of Missouri therefore express a preference for dismissing the insufficient portions of a plaintiff's pleadings with leave to amend. *See, e.g., Turkan v. Wal-Mart Stores East I, LP*, Case No. 4:22-CV-00645-JAR, 2022 WL 2663741, at *2 (E.D. Mo. Jul. 11, 2022)

(acknowledging that Rule 12(f) permits striking redundant claims, but dismissing without prejudice, rather than striking, one of the plaintiff's duplicative counts in his complaint).

Courts are particularly hesitant to strike a plaintiff's class allegations prior to discovery on the issue and a class certification hearing.  *See, e.g., Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 10-04175-CV-C-NKL, 2012 WL 4090347, at *2 n.1 (W.D. Mo. Sep. 17, 2012) (collecting cases) (examining a motion to dismiss a plaintiff's class allegations prior to discovery and explaining that courts approach such motions with "a great deal of skepticism").  Nothing in Rule 23 forbids a court from striking class allegations at this early stage of the proceedings; indeed, the rule mandates that the Court examine the issue of class certification at an "early practicable time."  *Donelson*, 999 F.3d at 1092 (citing Fed. R. Civ. P. 23(c)(1)(A)).[1]  *See also McCrary v.  Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012) (dismissing class allegations for failure to meet the requirements of Rule 23 on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)).  Striking class claims that are insufficient on the face of the plaintiff's complaint is appropriate because such claims are "impertinent" material under Rule 12(f) and requiring the defendant to spend time and money to address such claims constitutes prejudice.  *Donelson,* 999 F.3d at 1092.  Nevertheless, striking class allegations remains a "rare remedy." *Huskey v. Colgate-Palmolive Company*, 486 F.

---

[1]      In *Donelson*, the Eighth Circuit noted that there is a circuit split regarding when a court may consider the sufficiency of a plaintiff's class allegations, with the Sixth Circuit finding that courts may consider motions to strike the allegations, and other circuits preferring to wait to determine the issue until after discovery.  999 F.3d at 1092.  The Eighth Circuit then aligned with the Sixth Circuit, holding that courts may consider motions to strike or dismiss class allegations from a plaintiff's complaint.  *Id*.

Supp. 3d 1339, 1350-51 (E.D. Mo. 2020) (collecting cases and quoting *Doyel v. McDonald's Corp.*¸ No. 4:08-CV-1198-CAS, 2009 WL 350627, at *5 (E.D. Mo. Feb. 10, 2009)).  Courts therefore apply a particularly stringent standard to motions to strike a plaintiff's class allegations.  *See Barker v. Nestle Purina PetCare Company*, 601 F. Supp. 3d 464, 473 (E.D. Mo. 2022) (denying a motion to strike class allegations pending further discovery on the issue, despite "serious doubts" about the plaintiff's ability to satisfy Rule 23 at that later stage).

Courts are to evaluate a motion to strike class allegations in the light most favorable to the plaintiff, accepting the plaintiff's allegations as true.  *See Doyel*, 2009 WL 350627, at *6.  The Court must deny the motion when a more rigorous application of the facts is required to fully evaluate the plaintiff's claims.  *Id*.  At this stage, all doubts must be resolved in favor of the plaintiff with the understanding that the plaintiff may modify the class allegations after discovery on the issue.  *See Anglin v. Edgewell Personal Care Co.*, Case No. 4:18-CV-00639-NCC, 2018 WL 6434424, at *14 (E.D. Mo. Dec. 7, 2008).  *See also, St.  Louis Heart Center, Inc. v. Nomax, Inc.*, Case No. 4:15CV517 RLW, 2015 WL 9451046, at *2 (E.D. Mo. Dec. 23, 2015) (internal citations omitted) (noting that overbreadth is not a *per se* ground for dismissal of class allegations because the plaintiff may later shrink the allegations to eliminate the concern).  If there is a "chance" that the allegations will satisfy Rule 23 after discovery, the parties must be afforded the opportunity to conduct such discovery and present documentary evidence on the issue.  *Nobels*, 2012 WL 4090347, at *2.  In contrast, the Court will grant the motion when, after accepting all of the plaintiff's claims as true, no additional evidence the

6

plaintiff could provide via discovery or a class certification hearing would permit the Court to certify the proposed class.  *Id*.  at *3.  If the plaintiff makes no *prima facie* showing that the class allegations are potentially sufficient under Rule 23, dismissal is appropriate, unless the plaintiff shows that discovery will provide "persuasive information sustaining the class action allegations." *Id*.  at *2.

### Arguments of the Parties

Defendant begins by asserting that neither of Plaintiff's putative classes can be certified.  (Doc. No. 38 at 5).  As to the Declaratory Relief Class, Defendant alleges that the class lacks Article III standing because the class includes members who have never experienced rust corrosion on their vehicles.  *Id*.  Defendant also claims that Plaintiff himself lacks standing to seek declaratory relief because he no longer owns a 2018 Ford Focus.  *Id*.

As to the Manifestation Class, Defendant argues that the class both includes members who lack standing and is not ascertainable.  (Doc. No. 38at 8).  Defendant also argues against permitting Plaintiff to redefine his class to include only Class Vehicles with "excessive" rust.  *Id*. at 9.  According to Defendant, Plaintiff cannot propose an objective way to identify those class vehicles.  *Id*.  In its last argument in favor of striking Plaintiff's class allegations in their entirety, Defendant asserts that individual questions of manifestation and causation would overwhelm any common issues.  *Id*. at 15.

Plaintiff argues that members of his putative Declaratory Relief and Manifestation class have standing because the alleged defect is inherent to the cars, even if rust has not yet appeared on the vehicles.  (Doc. No. 40 at 7-8).  He also responds that he has standing

to bring these claims despite no longer owning a 2018 Ford Focus because there is impending risk of injury from the defects in the vehicle he had purchased, and because he was not reimbursed for the unsuccessful attempts to repair his vehicle. *Id*. at 8.   As to ascertainability, Plaintiff contends that it is premature to determine whether ascertainability will defeat the class, as the parties have not yet engaged in class-specific discovery. *Id*. at 10.   He also alleges that the class is ascertainable, as determining whether or not a person owns one of the Class Vehicles is a verifiable fact. *Id*. Lastly, Plaintiff asserts that individual inquiries will not overwhelm his putative Manifestation Class. *Id*. at 13-14.

Defendant also argues, in the alternative, that Plaintiff's putative classes must be significantly limited.  (Doc. No. 38 at 17).  First, Defendant asserts that Plaintiff cannot represent purchasers of vehicles other than the 2018 Ford Focus he purchased.  *Id*. Second, Defendant claims that Plaintiff waived his right to bring warranty-related claims on behalf of a class when he accepted its express warranties when purchasing his vehicle. *Id*. at 18.  Plaintiff responds that the 2011-2018 Ford Focuses are sufficiently similar to his 2018 Ford Focus that he may represent the purchasers of those vehicles in a class. (Doc. No. 40 at 14).  While he concedes that he has waived his ability to bring express warranty-related claims on a class-wide basis, he argues that he did not waive his right to do so for implied warranty-related claims.  *Id*. at 16.

## Analysis

### I.  Standing of Absent Class Members.

Defendant attacks both Plaintiff's Declaratory Relief Class and Manifestation Class on the basis that the classes would contain members who lack standing under Article III.  (Doc. No. 38 at 5, 8).  The doctrine of standing limits "the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal citations omitted). The "irreducible constitutional minimum of standing" therefore consists of three elements: (i) the plaintiff suffered an injury in fact, (ii) that injury is fairly traceable to the challenged conduct of the defendant, and (iii) that injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-562 (1992).

As a "jurisdictional prerequisite," standing is "a threshold issue that [the court is] obligated to scrutinize" at any stage and even "sua sponte if need be." *Bernbeck v. Gale*, 829 F.3d 643, 646 (8th Cir. 2016).  "[S]tanding is to be determined as of the *commencement* of suit." *National Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 973 (8th Cir. 2014) (quoting *Lujan*, 504 U.S. at 570 n.5) (emphasis added).  A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC)*, 528 U.S. 167, 185 (2000); *see also City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (holding that plaintiff had standing to pursue damages claim for alleged illegal chokehold but lacked standing to pursue injunctive relief).  And in the class action context, "if none of the named plaintiffs purporting to

9

represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  Defendant asserts that the injury in this case is a mere risk of corrosion, rather than a certainty of corrosion, and thus, Plaintiff's Manifestation Class incudes members who lack an injury-in-fact.  (Doc. No. 55 at 15:1-17).  Lastly, Defendant also claims that some members of the Manifestation Class will not be able to show that their injury is traceable to Defendant.  (Doc. No. 37 at 8-9).

In class action cases, the burden that the plaintiff must meet to show that some or all potential plaintiffs have standing differs depending on the stage of the litigation at which their standing is challenged.  The Eighth Circuit requires that all members of a class have standing at the certification stage of the proceedings.  *See Johannessohn,* 9 F.4th at 988 n.3 (citing generally *Forrest v.  Polaris Industries, Inc.,* 9 F. 4th 783 (8th Cir. 2021)).  *See also Fant v. City of Ferguson, Missouri,* Case No. 4:15-CV-00253-AGF, 2022 WL 2072647, at *6 (E.D. Mo. Jun. 9, 2022) (citing *In re Supervalue, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017); *Avritt v.  Reliastar Life Ins. Co.*, 615 F.3d 1023, 1024 (8th Cir. 2010)).  However, this does not address the need for putative class member standing *prior* to certification.  *Cf. TransUnion LLC v. Ramirez*, 141 S. Ct.  2190, 2208 n.4 (2021) (referencing generally *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019)) (noting that the Court's holding regarding class-member standing after certification did not apply to cases concerning standing prior to certification) (emphasis added).

"[A]ll that the law requires" for a class action to be justiciable at its inception is "that a *named* plaintiff have standing." *Cordoba*, 942 F.3d at 1275 (emphasis in

original).[2]  "That a suit may be a class action . . . adds nothing to the question of standing."  *Spokeo, Inc.*, 578 U.S. at 338 n.6 (internal citations omitted).  At the early stages of litigation, a representative plaintiff bears "no burden to show standing by other, unidentified members of the class."  *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40 n.20 (1976) (internal citations omitted) (evaluating a defendant's argument against certification on the basis that the proposed class included members who could not allege an injury in fact).  Instead, the impact of standing at these early stages is on the question of predominance under Rule 23(b)(3) or Rule 23(b)(2).  *See Cordoba*, 942 F.3d at 1275.

Rule 23(b)(3) applies to damages classes "and requires that 'the questions of law or fact common to class members predominate over any questions affecting only individual members[.]'"  *Fant*, 2022 WL 2072647, at *8 (quoting Fed. R. Civ.  P. 23(b)(3)).  Similarly, in class actions for declaratory relief, Rule 23(b)(2) requires that the class be "cohesive."  *See In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) (internal citations omitted).  This analysis "breaks down" when a court must determine standing for each individual member of a class prior to providing relief.

---

[2]  The Eleventh Circuit's holding is not binding on this Court.  However, the Eighth Circuit has not yet addressed the issue of class member standing prior to class certification.  The Eleventh Circuit carefully analyzed the holdings of other circuit courts when examining the issue of class member standing on a motion to decertify a class. While the procedural posture of *Cordoba* places it after certification as well, the Court nevertheless finds the research and reasoning in the case applicable to this case and highly persuasive.

*Cordoba*, 942 F.3d at 1276 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, J. concurring) (further internal citations omitted)).

Defendant argues that the cohesion of Plaintiff's proposed classes breaks down because the Court must determine whether each individual vehicle of a class member actually exhibits the rusting at issue.  In order to demonstrate standing in a class action, each member of a class must show that their product has "manifested" a defect.  *See In re Zurn Pex Plumbing Products Liability Litigation*, 644 F.3d 604, 616 (8th Cir. 2011) (internal citations omitted).  It "is not enough . . . to allege that a product is at risk for manifesting this defect[.]"  *Id*.  Instead, the plaintiff must show that the product actually exhibited the defect alleged.  *Id*.

Plaintiff responds to this argument by distinguishing between the rusting as an injury, and the certainty that the class vehicles will rust as an injury.  If the rusting itself is Plaintiff's injury, then the members of the class would need to show that their vehicles actually rusted to demonstrate standing.  However, Plaintiff alleges that the injury is instead that Defendant's corrosion-protection measures are so insufficient that rusting is a certainty when class vehicles are sold.  *See* (Doc. No. 59 at 2).  The injury is therefore an economic injury: the plaintiffs would not have purchased the vehicle, or would have paid less, had the defect been disclosed.  *Id*.  Because each class vehicle contains this certainty of rusting when it leaves the manufacturing line, the plaintiffs would not need to demonstrate rusting individually in order to have standing.  Instead, the economic injury is sufficient to support standing when exhibition of the defect is a certain eventuality.  *See Tuter v. Freud Am., Inc.*, Case No. 4:22-cv-00282-RK, 2022 WL 4636225, at *5 (W.D.

Mo. Sep. 30, 2022).  *See also Tucker v. General Motors LLC*, 58 F.4th 392, 396 (8th Cir.

Jan. 19, 2023) (finding that the plaintiff detailed an ascertainable loss under the MMPA

when that plaintiff stated that the vehicles at issue would certainly consume excess oil

when the odometers reached 25,000 to 75,000 miles).

Defendant points out that the parties have already conducted discovery regarding

whether the class vehicles have actually exhibited rust.  (Doc. No. 57 at 8).  This

discovery revealed that only a "handful" of these vehicles had rust corrosion.  *Id*.

Therefore, according to Defendant, because discovery has already revealed that

Plaintiff's alleged injury is not a certainty and that an individualized inquiry is necessary

to determine each class member's standing, the Court should strike Plaintiff's putative

classes for lack of standing without further discovery.

The potential difficulty of determining each class member's standing at the relief

stage of the proceedings is nevertheless insufficient to defeat a proposed class on a

motion to strike.  For instance, in *Cordoba*, a case involving telemarketing, the Eleventh

Circuit chided the parties for failing to provide sufficient evidence for the Court to

determine whether members without standing overwhelmed potential predominance,

including evidence of (i) how many members had asked that the defendant no longer call

them, and (ii) how the class members would prove that they had so asked.  942 F.3d at

1276.  Examining cases from the Seventh Circuit and the First Circuit, the *Cordoba* Court

explained that issues of standing may be compelling reasons to define the class more

narrowly, but that the Court must have enough information to establish which members

were impacted and which were not before determining whether issues of standing

13

sufficiently defeated the predominance of a class.  *Id*. (citing *Kohen v. Pacific Management Investment Co., LLC*, 571 F.3d 672, 678 (7th Cir. 2009); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 28 (1st Cir. 2008)).

The Eighth Circuit imposes a higher standard than the First, Seventh, and Eleventh Circuits for class member standing at the certification stage; however, it has not settled the question of whether that standard applies prior to certification.  *See Legacy Gymnastics, LLC v. Arch Insurance Company*, Case No. 2:20-CV-4214, 2021 WL 1371503, at *2 n.2 (W.D. Mo. Jun. 9, 2021) (finding the defendant's cited Eighth Circuit cases inapposite because those cases only addressed standing at the certification stage of the proceedings).  District courts in the Eighth Circuit which have addressed the issue instead often hold that "at the pleadings stage, only the standing of the named plaintiff is relevant." *Id. Cf. Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008) (finding that a named plaintiff must maintain their personal interest in the litigation at all stages).  Even assuming, *arguendo*, that the discovery conducted thus far shows that only a "handful" of class vehicles have exhibited rusting, Plaintiff has still not had the benefit of full discovery necessary to propose how class members would prove their rusting if asked to do so.  Plaintiff may still develop a method for demonstrating this injury without requiring an individuated inquiry that defeats cohesion prior to certification.  The Court therefore finds that the First, Seventh, and Eleventh Circuits' justification for postponing resolution of the issue of class member standing is applicable here.

As such, the Court declines to strike Plaintiff's Declaratory Relief Class or Manifestation Class allegations on the basis of the putative class members' lack of

standing, prior to discovery on the issue and a hearing on class certification. *Cf. Nobles,* 2012 WL 4090347, at *2 n.1 (applying skepticism to a motion to strike class allegations prior to discovery). *See also Connector Castings, Inc. v. Joseph T. Ryerson & Son, Inc.*, No. 15-CV-851-SNLJ, 2015 WL 6431704, at *3 (E.D. Mo. Oct. 21, 2015) (finding it premature to strike class allegations when the dispute was factual and discovery was necessary to determine whether a class should be certified). To the extent that Plaintiff's purported classes are overbroad, the Court is mindful of Plaintiff's ability to later modify the class definitions. Overbreadth is therefore insufficient to justify striking Plaintiff's class allegations at this time. *See St. Louis Heart Center, Inc.*, 2015 WL 9451046, at *2 (internal citations omitted).

## II.    Plaintiff's Standing to Bring a Claim for Declaratory Relief.

Defendant next claims that Plaintiff himself lacks standing to bring his claim for declaratory relief (Count IV) because he no longer owns a 2011-2018 Ford Focus and does not intend to buy one in the future. (Doc. No. 38 at 8). Specifically, Defendant notes that Plaintiff requests declaratory relief, including a declaration that Ford must inspect, repair, and treat the Class Vehicles for rust. (Doc. No. 38 at 13). However, although Plaintiff owned a class vehicle when he first brought suit against Defendant, asserting claims in his individual capacity only, he has since sold the vehicle as part of a settlement with Bonmarito Ford, Inc, which is no longer a party. *See* Doc. No. 23 at 4-5; Doc. No. 38-1, Exh. A, 101:19-22. At the hearing, Plaintiff conceded that he no longer owned the vehicle when he filed the third amended petition. As Plaintiff no longer owns

15

a class vehicle himself, he lacks any "certainly impending risk of injury" from the alleged defect.  (Doc. No. 38 at 13).

Standing is the "requisite personal interest that must exist at the commencement of the litigation[.]"  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 338, 397 (1980) (internal citations omitted).  Such interest "must continue throughout [a case's] existence[.]"  *Id*.  Similarly, "mootness [is] the doctrine of standing in a time frame."  *Id*.  If the issues presented in a case "lose their life" due to a change in circumstances, such that the requested relief will no longer address the plaintiff's injury, the case is considered moot.  *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000) (quoting *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994)).  In other words, if there is no "reasonable expectation" that the alleged violation will recur or if interim events have "completely and irrevocably eradicated" the effects of the violation, the lawsuit is no longer considered a case or controversy under Article III.  *See Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (citing *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).  If a named plaintiff in a class action loses standing because his claim has become moot prior to class certification, the Court loses jurisdiction over the action, as it is neither a case nor a controversy under Article III.  *See Shipman v. Missouri Dept. of Family Services*, 877 F.2d 678, 682 (8th Cir. 1989) (citing *Inmates of Lincoln Intake & Detention Facility v. Boosalis*, 705 F.2d 102, 1023 (8th Cir. 1983) (further citations omitted).

Plaintiff argues that the damage to his car and Defendant's failure to repair it both constitute sufficient injuries-in-fact to confer standing on Plaintiff at this stage of the litigation.  (Doc. No. 40 at 8).  However, this does not explain how Plaintiff's proposed declarative remedy may address his injury, especially as Plaintiff no longer owns one of the Class Vehicles in question.  Plaintiff also claims that Defendant failed to provide a rental car during the unsuccessful repair attempts on his vehicle and that Defendant did not fully reimburse him for his car.  (Doc. No. 40 at 8).  These claims are not for injunctive or declaratory relief, and accordingly, they are not appropriate subjects of this claim.  *See Wal-Mart Stores, Inc.*, 564 U.S. at 363-365 (discussing the differences between class action claims properly brought pursuant to Rule 23(b)(3) (monetary claims) and those properly brought pursuant to Rule 23(b)(2) (declaratory claims) and rejecting an attempt to bring a claim for both types of relief).  If Plaintiff wishes to pursue monetary relief on his own behalf, he must request leave to amend his complaint to do so.

   As Plaintiff's declaratory claims are moot, he lacks standing to bring a claim on behalf of the Declaratory Relief class.  Therefore, the Court will grant Defendant's motion to strike the Declaratory Relief class.[3]

---

[3]     Under this reasoning, Plaintiff would also lack standing to bring a claim on his own behalf for declaratory relief.  However, as Defendant has only moved to strike the class allegations, and has not also moved to dismiss Count IV, the Court will not address that issue at this time.

III.   **Plaintiff's Putative Manifestation Class's Ascertainability and Predominance.**

Defendant attacks Plaintiff's putative Manifestation Class on its ability to meet two of the requirements of Rule 23(b)(3): (i) ascertainability, and (ii) predominance. (Doc. No. 38 at 10).  In order to certify a class, the proposed class must meet all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *See In re St. Jude Med., Inc.*, 425 F.3d at 1119 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).  Prior to considering Rule 23's explicit requirements, however, the Court must be satisfied that the proposed class is ascertainable.  *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016).  The Eighth Circuit has not addressed whether ascertainability is a "separate, preliminary requirement" of class certification, but it has confirmed that ascertainability is at least an implicit requirement that must be enforced as party of the "rigorous analysis" of Rule 23's requirements at the certification stage.  *See McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). Where, as here, a dispute arises regarding the method for identifying class members, "an independent discussion of whether a class is ascertainable" is warranted.  *Id.*  "A class may be ascertainable when its members may be identified by reference to objective criteria."  *McKeage*, 847 F.3d at 998 (citing *Sandusky*, 821 F.3d at 996).  When identifying class members through some objective basis is not possible, that class is not ascertainable.  *St.  Louis Heart Ctr., Inc.  v. Vein Ctrs. for Excellence, Inc.*, No. 4:13CV174 CDP, 2017 WL 2861878, at *4 (E.D. Mo. Jul. 5, 2017).

Ascertainability is especially important in Rule 23(b)(3) classes because of the need to notify absent class members and allow those members an opportunity to opt out of the litigation.  *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015).  "In ascertaining the class, the [C]ourt should not be required to resort to speculation, or engage in lengthy, individualized inquiries." *Planned Parenthood Arkansas & E. Oklahoma v. Selig*, 313 F.R.D. 81, 91 (E.D. Ark. 2016) (internal citations omitted).  Class definitions which capture substantially changing conditions for each class member are therefore unlikely to be ascertainable.  *See Cody v. City of St.  Louis*, Case No. 4:17-CV-2707-AGF, 2021 WL 6112480, at *5 (E.D. Mo. Dec. 27, 2021).

Defendant asserts that Plaintiff's Manifestation Class is not ascertainable because individual members would have to provide different evidence to prove two essential prongs of the class's claim: (i) that they experienced underbody or subframe rust, and (ii) that the alleged defect caused the rust.[4]  (Doc. No. 38 at 10).  These arguments are substantially similar to those the defendant asserted in *Hays v. Nissan North America, Inc.*, Case No. 4:17-CV-00353-BCW, 2021 WL 912262, at *2-3 (W.D. Mo. Mar. 8, 2021).  In that case, however, the Court noted that the condition of the Class Vehicles at

---

[4]     Defendant also claims that Plaintiff's putative Manifestation Class is not ascertainable because the Court cannot objectively determine what constitutes "excessive" rust on a class member's vehicle.  (Doc. No. 38 at 10).  While the term "excessive" may connote a subjective inquiry antithetical to ascertainability, *see Dumas v. Albers Medical, Inc.*, No. 03—640-CV-W-GAF, 2005 WL 2172030, at *5 (W.D. Mo. Sep. 7, 2005), this term is not actually present in Plaintiff's class definition. *See* (Doc. No. 22 at 6).  Instead, Defendant proposes that Plaintiff *might* amend his class allegations using this term to avoid overbreadth. (Doc. No. 38 at 9).  The Court therefore declines to consider whether this term would render Plaintiff's Manifestation Class no longer ascertainable at this time.

19

the time of their purchase would be ascertainable by purchase records, thus providing an objective criteria by which to define the class. *Id.* at *3. Similarly, the Court found that an expansive class period, on its own, could not defeat ascertainability. *Id*.

Defendant points out that Plaintiff fails to explain what objective criteria he proposes to use to determine whether the class vehicles in this case exhibited rust corrosion, aside from a hypothesized inspection of each class member's vehicle. (Doc. No. 49 at 11). This argument, however, does not render Plaintiff's proposed class non-ascertainable for two reasons. First, Defendant's hypothesized methodology may not be the methodology Plaintiff proposes at the class certification stage, after the parties have conducted discovery. *Cf. Hays*, 2021 WL 912262, at *3 (noting that the Class Vehicle's purchase records indicated their condition at the time of purchase). Second, regardless of the methodology eventually employed to determine contours of the class, the class itself may be identifiable on the basis of an objective inquiry: whether or not the cars have rust. That this inquiry may include members for whom the alleged defect did not cause rust does not render the class non-ascertainable, it merely means that some class members may not be entitled to damages awarded to the class by a judgment or settlement. The differing status of each class member's vehicle at the time of purchase is not the type of "intensive, individualized factual inquiry" that renders a class non-ascertainable. *Dumas*, 2005 WL 2172030, at *5 (holding that a class predicated on the purchase of counterfeit Liptor pills was not ascertainable because the class members did not and could not know whether they had purchased genuine or counterfeit pills). *Cf. McKeage*, 847 F.3d at 1000 (finding that the plaintiff's proposed class was ascertainable, despite the need to examine

20

each individual class member's contract for a particular choice-of-law provision).  The Court therefore declines to hold at this stage that Plaintiff's putative Manifestation Class is not ascertainable.

Defendant's arguments regarding the individualized inquiry necessary to determine whether the alleged defect manifested in each class member's vehicle are a bit stronger when assessed through the lens of predominance; though, the arguments are still ultimately unsuccessful on a motion to strike.  Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  At the certification stage, the movant bears the burden of satisfying these requirements "through evidentiary proof."  *Hudock v. LG Electronics U.S.A., Inc.*, 12 F.4th 773, 775-776 (8th Cir.  2021) (citing *Comcast Corp. v. Behrend*, 569 U.S.  27, 22 (2013)).  The predominance inquiry examines whether "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson*, 577 U.S. at 453 (internal citations omitted).  An individual question is one in which proposed class members will need to present evidence which varies from member to member.  *See Johannessohn*, 9 F.4th at 984.  In contrast, a common question is one in which each member can make a *prima facie* showing on the basis of the same evidence, or in which the issue is susceptible to "generalized, class-wide proof." *Id*.  at 985.  "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, and goes to the efficiency

of a class action as an alternative to individual suits." *Id*.  A predominance analysis

determines whether common evidence supports the merits of the plaintiffs' claim, rather

than whether common evidence can support each plaintiff's damages claim.  *See Day v.*

*Celadon Trucking Servs., Inc.*, 827 F.3d 817, 833 (8th Cir. 2016); *In re Dollar Gen.*

*Corp. Motor Oil Mktg. & Sales Practices Litig.*, No. 16-02709-MD-W-GAF, 2017 WL

3863866, at *5 (W.D. Mo. Aug. 2, 2017).

        The Court cannot "presume" or "assume" class-wide impact without evidence to

justify that presumption.  *Blades v. Monsanto Co.*, 400 F.3d 562, 570 (8th Cir. 2005)

(citing and affirming the district court's analysis of the case).  When this evidence is not

yet available to the parties, courts are hesitant to grant a motion to strike class allegations

on the basis of predominance.  For example, in *Bishop v. DeLaval Inc.*, the Court noted

that the defendant dedicated its argument to "highlighting the various individualized

factual and legal inquiries it anticipates will need to be addressed in this case[.]"  Case

No. 5:19-cv-06129-SRB, 2020 WL 4669185, at *2 (W.D. Mo. Jan. 28, 2020).

Nevertheless, the Court found that "discovery [was] needed to determine what the

common and individualized issues are and the scope and magnitude of such issues as they

relate" to the plaintiff's claims.  *Id*. (internal citations omitted).  Most district courts

addressing these motions have reached the same result.  *See Legacy Gymnastics, LLC*,

2021 WL 1371503, at *3 n.4 (listing cases).  *See also Sherrad v. Boeing Co.,* No. 4:13-

CV-1015 CEJ, 2013 WL 5786642, at *4 (E.D. Mo. Oct. 28, 2013); *St. Louis Heart Ctr. v.*

*Forest Pharmaceuticals, Inc.,* No. 4:12-CV-02224, 2013 WL 1076540, at *7 (E.D. Mo.

Mar. 3, 2013); *Doyel*, 2009 WL 350627, at *6; *Anglin,* 2018 WL 6434424, at *13-14

(expressing "serious doubts" as to predominance but denying a motion to strike).  *But see Kraetsch v. United Service Auto. Ass'n*, No. 4:14-CV-264-CEJ, 2015 WL 1457015, at *5 (E.D. Mo. Mar. 30, 2015) (striking the plaintiff's class allegations on the basis of predominance when the determination of the claims would require examining each member's compliance with their individual and unique insurance policy contract with the defendant).

The parties in this case have not had sufficient discovery to determine if any evidence exists to evaluate Plaintiff's claim on behalf of the class in the aggregate. Defendant argues that Plaintiff has not explained how additional discovery could overcome any concerns about predominance; however, this reverses the parties' respective burdens on a motion to strike.  As Plaintiff points out, common questions in this litigation include whether the design of the proposed class vehicles was defective. (Doc. No. 40 at 11-12).  The determination of this question rests on the manufacture and design of the vehicles' frames; thus, evidence regarding the manufacture and design of the proposed class vehicles may resolve the claim for all of the members included in the class.  *Id*.  As Defendant cannot show that no additional evidence Plaintiff could present during discovery would permit the proposed class to be certified, the Court will not strike Plaintiff's Manifestation Class allegations on the basis of predominance.  *See Nobles*, 2012 WL 4090347, at *3.

IV.     **Plaintiff's Representation of Purchasers of Vehicles other than the 2018 Ford Focus.**

District courts within Missouri are split on whether or when plaintiffs may assert claims related to products they did not personally purchase when bringing a claim under the MMPA on behalf of a class. *See Browning v. Anheuser-Busch, LLC*, 539 F.Supp.3d 965, 977 (W.D. Mo. 2021).   Courts apply three different approaches to plaintiffs asserting claims for products they did not purchase: (i) rejecting the claim for lack of standing because the plaintiff only has standing to bring claims for the exact product he purchased, *see Kelly v. Cape Cod Potato Chip Co.*, 81 F.Supp.3d 754, 757 (W.D. Mo. 2105); (ii) incorporating the question of standing into the adequacy and typicality requirement of Rule 23(a), conducted after class certification; *see In re Folgers Coffee*, Case No. 21-2984-MD-W-BP, 2021 WL 7004991, at *6 (W.D. Mo. Dec. 28, 2021); or (iii) applying the "substantially similar" test to determine whether the products and the operative facts giving rise to the cause of action are sufficiently similar to confer standing.   *See Goldman v. Tapestry, Inc.*, 501 F.Supp.3d 662, 667 (E.D. Mo. 2020).   Courts applying the first approach typically reason that it is more compliant with the wording of the MMPA.   In contrast, those applying the second and third approaches reason that these approaches are more similar to that the Supreme Court applied in *Gratz v. Bollinger*, when the Court found that potential transfer students had standing to bring a claim for injunctive relief on the basis of discrimination they experienced when applying to college as freshmen.   539 U.S. 244, 260 (2003).   *See Browning*, 539 F.Supp.3d at 977 (internal citations omitted).

Plaintiff and Defendant dispute which approach the Court should take in this case. Defendant frames the Court's consideration of these approaches in *Rawa v. Monsanto Company*, Case No. 4:17CV01252 AGF, 2017 WL 3392090, at *1 (E.D. Mo. Aug. 7, 2017) as adopting the first approach and rejecting the third approach. (Doc. No. 38 at 17). Thus, according to Defendant, whether the same corrosion processes are used on the same make and model, but different year, cars is immaterial; the pertinent inquiry is whether Plaintiff purchased those products. (Doc. No. 49 at 14).

Although Defendant points to both *Rawa* and *Kelly* as examples of the first approach to analyzing plaintiffs bringing claims for products they did not purchase, Plaintiff argues that the Court did consider products which were truly "substantially similar" in either case. (Doc. No. 40 at 14). Thus, according to Plaintiff, the *Rawa* and *Kelly* courts did not actually reject the "substantially similar" test in favor of the first approach, but instead merely pointed out that the products at issue were not, in fact, substantially similar. *Id.* As Plaintiff brings claims for cars of the same make and model, to which the same corrosion processes were applied, he argues that his products are significantly more similar to those considered in *Kelly* and *Rawa*.

The logic underlying the "substantially similar" test supports Plaintiff's distinction. Courts applying the "substantially similar" test find that the "overarching question" is whether the plaintiff's injury is substantially similar to "the claims of those [he] seeks to represent." *Browning*, 549 F.Supp.3d at 977 (internal citations omitted). These courts therefore consider both whether the products at issue are similar, but also whether the

25

"operative facts that give rise to the putative class representative['s] and the putative class's claims" are similar. *Id*. (internal citations omitted). This case is particularly similar to the case in *Goldman*, in which the Court applied the substantially similar test. 501 F. Supp. 3d at 667. In *Goldman*, the plaintiff brought a claim under the MMPA after purchasing a handful of Kate Spade products from an outlet store. *Id*. The plaintiff noted that the defendant tagged the products as "discounted," however, she asserted that the defendant had never sold the products at the higher original price it alleged in the discount tags. *Id*. The defendant argued that the plaintiff lacked standing under the MMPA because she did not purchase the "thousands" of other products which were tagged in this fashion. *Id*. However, the Court noted that the plaintiff was harmed by the defendant's pricing scheme, rather than the products themselves. *Id*. at 667. As the pricing scheme applied to the products the plaintiff had actually purchased as well as those she did not purchase but which members of the putative class may have purchased, the underlying operative facts were similar enough to confer standing on the plaintiff to bring the claim. *See id.*

Just as the same pricing scheme applied to all of the products at issue in *Goldman*, the same corrosion processes appear to apply to each year of Ford Focus for which Plaintiff brings a claim. Importantly, during oral argument, Defendant conceded that it conducts a single corrosion test when developing a "program" for a car model, in this case, the Ford Focus. (Doc. No. 55 at 51:17-23). Though it would run the test again if a new year of the same model included a part that had not yet been tested, this was not the case for the 2011-2018 Ford Focuses. *Id*. at 52:1-5. Plaintiff alleges that susceptibility to

corrosion and the model's failure to pass this corrosion test is the cause of both his and the putative class members' underlying injuries. *Id.* at 37:21-25. Thus, without the benefit of further discovery, the operative facts giving rise to both sets of claims are substantially similar enough to confer standing on Plaintiff to bring a claim for years of Ford Focuses he did not purchase on behalf of the putative class. Accordingly, the Court will not strike Plaintiff's class allegations regarding the 2011-2017 Ford Focuses in Count I of his amended petition.

### V.    Plaintiff's Warranty-Related Claims.

Defendant points out that the document pertaining to warranties that Plaintiff received when he purchased his vehicle states that he "may not bring any warranty-related claim as a class representative . . . a member of a class of claimants or in any other capacity." (Doc. No. 38-3 at 12, Exh. C at 6). Plaintiff does not dispute the impact of this waiver but asserts that this waiver pertains only to express warranties, and while describing both express and implied warranties, states that the Court should not strike his claim for a violation of implied warranties as outlined in Count II of his complaint. *See* (Doc. No. 22 at 14).

The waiver at issue here stipulates that Defendant will not be liable for certain damages and while it discusses both express and implied warranties, it states that a buyer may not bring "any warranty-related" claim against it in any representative capacity. *Id.* at 6. Warranty waivers are interpreted through the same methods as any other contract. *See Miller v. Elliott Aviation Aircraft Sales, Inc.*, No. 4:13-cv-00161-JAJ, 2014 WL 12601040, at *5 (S.D. Iowa, Mar. 31, 2014) (applying Iowa law to interpreting a

warranty waiver).  Under Missouri law, the Court must consider the waiver as a whole, harmonizing the provisions and giving the terms their plain, ordinary, and express meaning.  *U.S. Neurosurgical, Inc. v. Midwest Division-RMC, LLC*, 303 S.W.3d 660, 670 (Mo. Ct. App. Mar. 2010) (Newton, J. dissenting) (internal citations omitted).  The warranty waiver as to class claims in this case does not distinguish between express and implied warranties, and the Court cannot read such a distinction into the contract.  When viewed as a harmonious whole, and giving ordinary meaning to the terms "any warranty-related claim," the warranty wavier applies to both express and implied warranties. Thus, the Court will strike Plaintiff's class action claims for breach of both express and implied warranty.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to strike Plaintiff's class allegations, (Doc. No. 38), is **GRANTED in part and DENIED in part**.  The Court will strike Plaintiff's Declaratory Relief Class.  The Court will also strike Plaintiff's warranty-related class allegations in Count II of his petition.

Dated this 28th day of March, 2023.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

28